UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**ALICIA SEPULVEDA,**
    **Plaintiff,**

v.    No. 5:20-cv-00915-JKP-ESC

**SKECHERS USA RETAIL, LLC and**
**SKECHERS USA, INC.,**
    **Defendants.**

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Skechers USA Retail, LLC and Skechers USA, Inc.'s (Skechers) Motion for Summary Judgment (ECF No. 38) to which Plaintiff responded and Skechers replied (ECF Nos. 41, 42). After careful consideration of the arguments and evidence of the parties, the Court grants the motion.

**I. BACKGROUND**

Plaintiff Alicia Sepulveda ("Sepulveda") brings this action for injuries she sustained when she tripped and fell while entering a San Antonio Skechers. On June 25, 2018, as Sepulveda entered the Skechers store located at 8650 Fourwinds Drive, her foot caught in a mat at the entrance to the store and she fell face first onto the floor. The impact of the fall lacerated her head, which resulted in having a metal plate surgically implanted into her head and face.

Plaintiff brought a cause of action for negligence in the 408th Judicial District, Bexar County, Texas on June 3, 2020. Defendants removed the case to this Court on the basis of diversity jurisdiction. Skechers moves for summary judgment contending Sepulveda cannot establish any essential element of a premises liability claim. Because the Court is sitting in diversity and the incidents at issue took place in Texas, Texas law governs Plaintiff's claims. *Romo v. Ford Motor Co.*, 798 F. Supp. 2d 798, 805 (S.D. Tex. 2011).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249; *see also Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) ("A [dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham.") (emphasis omitted). A dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Id*. 477 U.S. at 248; *see also Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) ("A fact is material only if its resolution would affect the outcome of the action[.]").

The party moving for summary judgment bears the initial burden of informing the Court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Id.*; *Celtic Marine Corp. v. James C. Justice Co., Inc.*, 760 F.3d 477, 481 (5th Cir. 2014). The nonmoving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine dispute of material fact for trial. *Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998). If the nonmoving party does not produce evidence to show a genuine dispute of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

While all evidence and reasonable inferences are viewed in the light most favorable to the nonmovant, and all disputed facts are resolved in favor of the nonmovant, the judge's function "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine [dispute] for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *United States v. Renda Marine, Inc.*, 667 F.3d 651, 655 (5th Cir. 2012) (quoting *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003)); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). "Factual controversies are resolved in favor of the nonmoving party 'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

When a party bears the burden of proof, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). "When the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to its case.'" *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex,* 477 U.S. at 322; *Apache Corp. v. W & T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010)). "In such a situation, there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 322-23.

### III. DISCUSSION

**A. Evidentiary Objections**

Skechers objects to several portions of Sepulveda's summary judgment evidence. The admissibility of summary judgment evidence is subject to the same rules that govern the admissibility of evidence at trial. *Okpala v. City of Houston*, 397 F. App'x. 50, 55 n.15 (5th Cir. 2010); *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 387-88 (5th Cir. 2009); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285 (5th Cir. 2004) (citing *Resolution Tr. Corp. v. Starkey*, 41 F.3d 1018, 1024 (5th Cir. 1995)). But "[a]t the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form." *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) (citing Fed. R. Civ. P. 56(c); *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017)).

First, Skechers objects to the deposition of Jesse Sepulveda and seeks to strike it in its entirety on the basis that Mr. Sepulveda has not previously been identified as a fact witness. Mr. Sepulveda was produced as a witness at the request of Skechers who deposed Mr. Sepulveda. The fact of the deposition shows that the witness was known to Skechers. Additionally, Skechers was aware that Mr. Sepulveda was a witness likely to have discoverable information when employees Johnathan Carver and Sarah Alvarado submitted their incident reports as Mr. Sepulveda was present during the incident. ECF Nos. 41-4 (Carver Dep. 48:21-23); 41-7 (Alvarado Dep. 27:11-29:9); 41-4 at 18 (Carver's Customer Incident Report noting "Husband" and "Alicia" with phone numbers under each).[1] Moreover, despite knowing of the existence of the witness, Skechers did not move to compel disclosure, but objected only after Plaintiff submitted the deposition testimony as part of her summary judgment evidence. Therefore, this objection is overruled.

---

[1] Mr. Carver testified that he did not write the phone numbers on the incident report he signed. Carver Dep. 29:6-19. Ms. Alvarado testified that with respect to any incident report, she "put down" Mrs. Sepulveda's name and "a phone number" and "that was it." Alvarado Dep. 27:11-28:8.

Next, Skechers objects to the affidavit of Joe Gonzales on the basis that Mr. Gonzales has not been identified as a fact witness. Skechers' previous motion to exclude Mr. Gonzales's testimony (ECF No. 18) was denied by the Honorable Elizabeth S. Chestney prior to the filing of the subject objection. ECF No. 37. Judge Chestney's order and the transcript of the hearing on the motion make clear: "Plaintiff has designated Gonzalez as a non-retained, testifying expert under Rule 26(a)(2)(C). Such witnesses are not required to provide an expert report under Rule 26(a)(2)(B) and may testify as both a fact witness and also provide expert testimony under Rule 702 of the Federal Rules of Evidence. *See* Fed. R. Civ. P. 26 advisory committee's notes to 2010 amendments, at ¶ 7." ECF Nos. 37 at 2; 40 (Hearing Transcript at 9:9-11:16). Accordingly, this objection is overruled.

Finally, Skechers objects to Mrs. Sepulveda's testimony "where she describes a 'condition' of the subject mat that she claims caused her fall." ECF No 41 at 4. Skechers objects to the testimony because Mrs. Sepulveda testifies that she did not see the condition of the mat. Rather, Mrs. Sepulveda testifies that she felt the condition of the mat with her foot. Mrs. Sepulveda may testify about her own experiences including what she felt with her foot during the incident. As to offering an opinion about a condition of the mat, a lay witness may testify in the form of an opinion if it is "rationally based on the witness's perception; helpful to clearly understanding the witness's testimony or to determining a fact in issue; and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Civ. P. 701. Thus, the objection is overruled.

**B. Defendants' Motion for Summary Judgment**

**1. Theory of Liability**

"Under the general umbrella of negligence, there are distinct species of claims . . . ." *Odom v. Kroger Texas, L.P.*, No. 3:13-cv-579, 2014 WL 585329, at *3 (N.D. Tex. Feb. 14, 2014). Negligent activity and premises liability are two such distinct claims under Texas law. *Allen v. Wal-Mart Stores*

5

*Texas, LLC*, No. 14-cv-3628, 2015 WL 1955060, at *5 (S.D. Tex. Apr. 29, 2015). Thus, a person injured on another's property may have a negligent activity or a premises liability claim against the property owner. *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016). "When the injury is the result of a contemporaneous, negligent activity on the property, ordinary negligence principles apply. When the injury is the result of the property's condition rather than an activity, premises-liability principles apply." *Id.* (citing *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992) and *H.E. Butt Grocery Co. v. Warner*, 845 S.W.2d 258, 259 (Tex. 1992)).

**a. Negligent Activity**

Under the negligent activity theory of recovery, the plaintiff's injury "must result from the defendant's contemporaneous activity." *Mangham v. YMCA of Austin, Texas–Hays Communities*, 408 S.W.3d 923, 929 (Tex. App.—Austin [3d Dist.] 2013, no pet.). Recovery under a negligent activity theory requires "that the person have been injured by or as a contemporaneous result of the activity itself rather than a condition created by the activity." *Keetch*, 845 S.W.2d at 264. In other words, "negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010). "[W]hen a claim does not result from contemporaneous activity, the invitee has no negligent-activity claim, and his claim sounds exclusively in premises-liability." *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 215 (Tex. 2015).

Plaintiff does not allege facts that show or support an inference that there was contemporaneous activity that caused Mrs. Sepulveda's injuries. Rather, Plaintiffs argue that Skechers breached a duty to Plaintiff by leaving the mat in the entryway even when there was no inclement weather and by failing to check on the mat routinely, and that this negligence proximately

6

caused Mrs. Sepulveda's injuries.

Courts have consistently found these types of allegations support a claim for premises liability. *See, e.g., Bustos v. Wal- Mart Stores Texas, L.P.*, No. 5:12-cv-0911-XR, 2013 WL 1345151, at *2 (W.D. Tex. Apr. 1, 2013) (holding that permitting a condition to exist and failing to warn of the condition only support a claim for premises liability, not negligent activity); *Reyes v. Dollar Tree Stores, Inc.*, 221 F. Supp. 3d 817, 824 (W.D. Tex. 2016) (citations omitted) ("a failure to act with regard to physically unsafe property does not support a negligent activity claim"); *Henderson v. Wal-Mart Stores, Inc.*, No. 1:14-cv-224, 2015 WL 3901755, at *5 (E.D. Tex. June 23, 2015) "[a]n omission or failure to act does not support a negligent activity claim"); *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 386, 391 (Tex. 2016) (The Texas Supreme Court has "consistently treated slip/trip-and-fall cases as presenting claims for premises defects."); *Bartosh v. Gulf Health Care Ctr.-Galveston*, 178 S.W. 3d 434, 447 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (negligently permitting a condition to exist "is not a negligent activity case"). Because Plaintiff makes no allegation nor brings any evidence of contemporaneous activity, Plaintiff's case sounds entirely in premises liability.

**b. Premises Liability**

Under Texas law, a premises liability claim arises from a property owner's duty "to make the premises safe or warn of dangerous conditions as reasonably prudent under the circumstances." *Occidental*, 478 S.W.3d at 644 (citing *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983) and *Smith v. Henger*, 226 S.W.2d 425, 431 (Tex. 1950)). An invitee is "one who enters on another's land with the owner's knowledge and for the mutual benefit of both." *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex. 1975); *Am. Indus. Life Ins. Co. v. Ruvalcaba*, 64 S.W. 3d 126, 134 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). A customer is an invitee. As such, a

storeowner owes its customer a duty to exercise reasonable care to protect her from known or discoverable dangerous conditions in the store. *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998). But "[t]he duty a premises owner owes to its invitees is not that of an insurer. That is to say, a condition is not unreasonably dangerous simply because it is not foolproof." *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 162–63 (Tex. 2007) (citations omitted).

**2. Summary Judgment Evidence**

Skecher's store manager Albert Cano testified by affidavit that he "personally placed the subject mat and the yellow cautionary sign at the entrance of the store" the day before and was not at the store on the day of the accident. ECF No. 38-1 ¶ 4.

Then Assistant Store Manager Johnathan Blayne Carver[2] testified by affidavit that he "was never at any time on or before the date of the subject accident involving Alicia Sepulveda aware of any hazard regarding the subject mat or the store entrance which would cause a hazard, and [he] was not made aware of any slip and falls or complaints regarding the subject mat or the store entrance on or before the date of the accident at any time." ECF No. 38-2 ¶ 3. He further testified that at 9:30 a.m. on the day of the accident, he noticed that the mat was in place, flat, not buckled, and not uneven. *Id.* ¶ 5. After Mrs. Sepulveda fell, Mr. Carver "noticed that the subject mat was still in the exact same location as it had been when I last saw it at approximately 9:30 a.m. At that time it was flat, it was not buckled and it was not uneven." *Id.* ¶ 6.

Assistant Store Manager Sarah Alvarado testified by affidavit that "[a]t no time on or before the date of the accident was [she] ever made aware of any condition of that mat which could present a hazard to anyone. At no time on or before the date of the accident was [she] aware of any condition of the entrance to the store which would cause a hazard to anyone. At no time was I aware of any slip

---

[2] Mr. Carver was promoted to Store Manager in the spring of 2021. Carver Dep. 10:6-11:10.

and fall incidents or complaints regarding the subject mat or the store entrance. *Id.* ¶ 5. On the day of the accident she walked over the mat shortly before 10:00 a.m.; "noted that the subject mat was in place as well as the yellow cautionary sign; and observed the mat was flat, not buckled, and not uneven." *Id.* ¶ 6. She did not notice the mat after the accident because she "was focused on assisting Alicia Sepulveda." *Id.* ¶ 7.

Mrs. Sepulveda testified by deposition that she did not see the condition of the mat when she entered the store, rather, she felt her foot get caught on the mat, tried to pull her foot out, lost her balance, and fell. ECF No. 38-5 (A. Sepulveda Dep. 61:9-22). She did not notice the condition of the mat after her fall because her head was bleeding so her eyes were closed. *Id.* 55:25-56-20. The EMS incident report reflects that when EMS arrived, "there was approximately about a pint of blood on the floor," a Skechers employee was applying pressure with paper towels to the cut on her head, and Mrs. Sepulveda told the responder "that she tripped on the entrance door mat as she walked into the store." ECF No. 43-1 at 5.

Mr. Sepulveda testified by deposition that he did not notice the condition of the mat prior to his wife falling, because she entered the store ahead of him, but he did see it after. ECF No. 41-2 (J. Sepulveda Dep. 12:15-22). He noticed the mat because after his wife fell, someone walked up to the mat and pulled on it—"like stretching it"—and in their doing this, he noticed that the mat was raised. *Id.* 13:1-20.

Mrs. Sepulveda testified that she arrived at the store after lunch but before 3:00 p.m. A. Sepulveda Dep. 8:11-16. Alliance Mobile Health records show that the 911 call was received at 1:41 p.m. ECF No. 41-3 at 6. The record and deposition testimony establishes that Carver did not view or check on the mat from 9:30 a.m. until after EMS arrived and Alvarado did not view or check on the mat from shortly before 10:00 a.m. until after EMS arrived. ECF Nos. 38-2 ¶ 5; 38-3 ¶ 6; 41-4 at 12;

9

Alvarado Dep. at 8. Carver testified that he did not know how many people came into the store before Mrs. Sepulveda fell. ECF No. 41-4 (Carver Dep. 48:10-12).

Alvarado testified the mat was to be put out during inclement weather but did not know of any policy regarding checking the mat. Alvarado Dep. 22:2-23: 23, 24:1-3. The Skechers employees all agreed that the mat was only put out during inclement weather. ECF Nos. 41-4 at 12; 41-6 ¶ 3; 41-7 at 8. Alvarado and Carver could not testify as to any known policy or training regarding the mat, and could not state with certainty who was responsible for the mat. Carver Dep. 38:1-40:18; Alvarado Dep. 22:7-21. One witness testified that June 28, 2018 was beautiful and sunny, another testified that the day was wet, and two witnesses could not recall. A. Sepulveda Dep. 13:10-14; Carver Dep. 38:10-12; J. Sepulveda Dep. 8:15-19; Alvarado Dep. 23:9-12.

### 3. Essential Elements of Plaintiff's Claim

To establish liability, Mrs. Sepulveda must establish the existence of a duty owed to her by Skechers and a breach of that duty. *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983). "It is fundamental that the existence of a legally cognizable duty is a prerequisite to all tort liability." *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex. 1993). "In a premises liability case, the duty owed to the plaintiff depends on the status of the plaintiff at the time of the incident." *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 675 (Tex. 2004). The plaintiff's status can be "an invitee, a licensee, or trespasser." *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 655 (Tex. 1999). Skechers and Mrs. Sepulveda agree that she was an invitee. ECF Nos. 1-4 at 4; 38 at 5. Accordingly, Skechers owed Mrs. Sepulveda a duty "to make safe or warn against any concealed, unreasonably dangerous conditions" of which Skechers was or reasonably should have been aware, but Mrs. Sepulveda was not. *Austin*, 465 S.W.3d at 203.

To prevail on her claim, Mrs. Sepulveda must establish that: (1) the owner had actual or

constructive knowledge of a condition on the premises, which posed an unreasonable risk of harm; (2) the owner did not exercise reasonable care to reduce or eliminate that risk; and (3) the owner's failure to use reasonable care proximately caused her injuries. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000).

To establish the knowledge element, Mrs. Sepulveda must establish "(1) the defendant caused the condition; (2) the defendant actually knew of the condition; or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it." *Murray v. Chick-Fil-A, Inc.*, 626 F. App'x. 515, 517 (5th Cir. 2015) (per curiam) (internal quotation marks omitted) (citing *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002)); *Gonzalez*, 968 S.W.2d at 936 (citing *Keetch*, 845 S.W.2d at 264; *Corbin*, 648 S.W.2d at 296).

Actual or constructive knowledge of an unreasonably dangerous condition on the premises is an essential element of a premises liability claim. *Arce v. McGough,* No. 4:18-cv-64, 2018 WL 4608464, at *3 (Tex. App.—San Antonio 2018, no pet.); *Vernon v. Dallas/Fort Worth Int'l Airport Bd.*, No. 2:16-cv-488, 2017 WL 2979828, at *2 (Tex. App.—Fort Worth 2017, no pet.); *Robinson v. Wal-Mart Stores, Tex., LLC*, 561 F. App'x 417, 419 (5th Cir. 2014) (per curiam) ("In the absence of evidence establishing [constructive knowledge], the district court appropriately granted . . . summary judgment relief.").

Actual knowledge can be established with evidence that: (1) employees caused the harmful condition; (2) employees either saw or were told of the harmful condition prior to the plaintiff's injury; or (3) the harmful condition was present for so long that it should have been discovered in the exercise of reasonable care. *Keetch*, 845 S.W.2d at 264.

"To establish a premises owner's constructive knowledge of the presence of an unreasonable risk of harm, a plaintiff generally must prove that the risk existed for a time sufficiently long to permit

the premises owner (or his employee) to (1) discover it and (2) correct it." *Dixon v. Wal-Mart Stores, Inc.*, 330 F.3d 311, 316 (5th Cir. 2003). To establish constructive knowledge, Texas courts have adopted a "time-notice" rule because "temporal evidence best indicates whether the owner had a reasonable opportunity to discover and remedy a dangerous condition." *Reece*, 81 S.W.3d at 816. But the question of constructive notice "requires analyzing the combination of proximity, conspicuity, and longevity:"

> If the dangerous condition is conspicuous as, for example, a large puddle of dark liquid on a light floor would likely be, then an employee's proximity to the condition might shorten the time in which a jury could find that the premises owner should reasonably have discovered it. Similarly, if an employee was in close proximity to a less conspicuous hazard for a continuous and significant period of time, that too could affect the jury's consideration of whether the premises owner should have become aware of the dangerous condition.

*Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 567-68 (Tex. 2006) (quoting *Reece*, 81 S.W.3d at 816).

**4. Plaintiff Cannot Establish the Condition and Knowledge Elements of her Claim**

**a. Dangerous Condition**

"A condition poses an unreasonable risk of harm when there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Dietz v. Hill Country Rests., Inc.*, 398 S.W.3d 761, 767 (Tex. App.—San Antonio 2011, no pet.) (citing *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002)). Texas courts have rejected the argument that the existence of a mat alone creates a dangerous condition. Rather, it is a trip hazard—such as the buckle, ruffle, or bend—in a mat that can create a dangerous condition. *See, e.g., Bowman v. Brookshire Grocery Co.*, 317 S.W.3d 500, 504 (Tex. App.—Tyler [12th Dist.] 2010, reh'g denied) (ruffled edges of the mat created the unreasonable risk of harm, not the mat itself); *cf. H.E. Butt Grocery Co. v. Resendez,* 988 S.W.2d 218, 219 (Tex. 1999) ("the mere

fact that a store has a customer sampling display cannot, without more, be evidence of a condition on the premises that poses an unreasonable risk of harm"); *Weldon v. Wal-Mart Stores Texas*, No. 1:15-cv-62, 2016 WL 4248931, at *8 (E. D. Tex. Aug. 10, 2016) (focusing on plaintiff's failure to adduce evidence "that this specific ripple existed before, or at the time, of the alleged incident").

The mere fact that a plaintiff was injured, and points to the condition as the cause of her injury, is insufficient to establish that the condition was unreasonably dangerous. *Shoemaker v. Kohl's Dept' Stores, Inc.*, No. 16-cv-273, 2017 WL 1192797, at *3 (Tex. App.—Dallas 2017, no pet.) (collecting cases). Plaintiff presents no evidence other than Mrs. Sepulveda's fall that a dangerous condition existed prior to her entering the store. Each of the witnesses, including Mrs. and Mr. Sepulveda, testified either that they observed the mat as flat or they didn't notice anything about the mat before Mrs. Sepulveda tripped and fell.

Then Assistant Store Manager Johnathan Blayne Carver[3] testified by affidavit that he "was never at any time on or before the date of the subject accident involving Alicia Sepulveda aware of any hazard regarding the subject mat or the store entrance which would cause a hazard, and [he] was not made aware of any slip and falls or complaints regarding the subject mat or the store entrance on or before the date of the accident at any time." ECF No. 38-2 ¶ 3. He further testified that at 9:30 a.m. on the day of the accident, he noticed that the mat was in place, flat, not buckled, and not uneven. Id. ¶ 5. After Mrs. Sepulveda fell, Mr. Carver "noticed that the subject mat was still in the exact same location as it had been when [he] last saw it at approximately 9:30 a.m. At that time it was flat, it was not buckled and it was not uneven." *Id.* ¶ 6.

Assistant Store Manager Sarah Alvarado testified by affidavit that "[a]t no time on or before the date of the accident was [she] ever made aware of any condition of that mat which could present

---

[3] Mr. Carver was promoted to Store Manager in the spring of 2021. Carver Dep. 10:6-11:10.

a hazard to anyone. At no time on or before the date of the accident was [she] aware of any condition of the entrance to the store which would cause a hazard to anyone. At no time was [she] aware of any slip and fall incidents or complaints regarding the subject mat or the store entrance. *Id.* ¶ 5. On the day of the accident she walked over the mat shortly before 10:00 a.m.; "noted that the subject mat was in place as well as the yellow cautionary sign; and observed the mat was flat, not buckled, and not uneven." *Id.* ¶ 6. She did not notice the mat after the accident because she "was focused on assisting Alicia Sepulveda." *Id.* ¶ 7.

      Mrs. Sepulveda testified by deposition that she did not see the condition of the mat when she entered the store, rather, she felt her foot get caught on the mat, tried to pull her foot out, lost her balance, and fell. ECF No. 38-5 (A. Sepulveda Dep. 61:9-22). She did not notice the condition of the mat after her fall because her head was bleeding so her eyes were closed. *Id.* 55:25-56-20.

      Mr. Sepulveda testified by deposition that he did not notice the condition of the mat prior to his wife falling, because she entered the store ahead of him, but he did see "a ridge" on the mat after she fell. J. Sepulveda Dep. 12:15-22; 40:8-23. He noticed the ridge, because after his wife fell, someone walked up to the mat and pulled on it—"like stretching it"—and in their doing this, he noticed that the mat was raised, stating: "As a matter of fact, if the young man hadn't pulled on it I wouldn't have even noticed it." *Id.* 13:1-20; 40:22-23.

      In the absence of an objective test for determining whether a condition presents an unreasonable risk of harm, courts look for evidence of other falls attributable to the same condition, the defectiveness of the condition causing the fall, or other complaints regarding the lack of safety or unusual nature of the premises. "[E]vidence of a similar injury or complaint attributable to the same condition is probative on the question of whether a condition posed an unreasonable risk of harm." *Shoemaker,* 2017 WL 1192797, at *3 (citing *Farrar v. Sabine Mgmt. Corp.*, 362 S.W.3d 694, 698

(Tex. App.—Houston [1st Dist.] 2011, no pet.)). For example, in *Brinson Ford v. Alger*, the plaintiff "stepped off the unrailed portion of [a] ramp and fell." 228 S.W.3d 161, 162 (Tex. 2007) (per curiam). In concluding that the ramp did not pose an unreasonable risk of harm, the court was persuaded, in part, by evidence that "[n]o other customer visiting the property over a ten-year period had ever been injured by the ramp, nor has the dealership received complaints about the ramp's safety." *Id.* at 163.

In this case, there is no evidence that any other customer has fallen at this Skechers store. The Skechers employees each testified that at no time "on or before the date of the subject accident" were they "aware of any condition that would cause a hazard or a danger to anyone." *See* Cano Affidavit ¶ 6; Alvarado Affidavit ¶ 5; Carver Affidavit ¶ 3. Nor had any of the employees been "made aware of any slip and falls or complaints regarding the subject mat or the store entrance." *See id.*

Regarding Plaintiff's arguments that there were no policies, training, or specific responsibilities with respect to the mat, alleged failures to abide by "compliance guidelines" or "practice good housekeeping"—if any—"are not evidence that the [mat] itself was unreasonably dangerous." *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 408 (Tex. 2006); *cf. Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983) (holding that a slip-and-fall plaintiff may recover by showing that the storeowner failed to use reasonable care to protect customers from conditions which were dangerous from the inception of their use, as opposed to becoming dangerous over time); *Crosby v. Minyard Food Stores, Inc.*, 122 S.W.3d 899, 901-02 (Tex. App. 2003) (mat was unsafe from the moment it was put on the floor due to evidence that store personnel straightened it between forty-eight and eighty-six times during an eight-hour shift); *Richardson v. Wal-Mart Stores, Inc.*, 963 S.W.2d 162, 164 (Tex. App. —Texarkana 1998, no pet.) ("Absent evidence of the length of time that the [condition] had been on the floor, there can be no inference that any increased level of inspecting or cleaning by [the storeowner] would have discovered and remedied the condition.").

There is no evidence indicating that the mat had a trip hazard—was buckled, ruffled, bent, or had a ridge—before Mrs. and Mr. Sepulveda entered the store. Without additional evidence, the fact that Plaintiff fell on Skecher's premises does not support the assertion or lead to an inference that the mat presented an unreasonably dangerous condition such that a reasonably prudent person would foresee harm. The Court finds there is no evidence that an unreasonably dangerous condition existed before Mrs. and Mr. Sepulveda entered the store, and that Plaintiff has failed to come forth with evidence creating a genuine dispute of material fact as to this element.

### b. Knowledge

Mrs. Sepulveda establishes Skechers' knowledge of a dangerous condition by presenting evidence "that the [condition] of the mat had existed long enough for [Skechers] to have discovered it upon reasonable inspection." *Bowman*, 317 S.W.3d at 505. Plaintiff argues that common knowledge that mats—like the mat at the Skechers store—become buckled, ruffled, or bent when customers traverse over them makes Skecher's failure to check on the mat for more than three hours unreasonable. ECF No. 41 at 6. And had Skechers performed regular inspections of the mat, rather than walking over it when arriving at work and ignoring the mat for the rest of the day, it would have knowledge of the condition of the mat. To determine whether a storeowner had knowledge of a dangerous condition, courts analyze "the combination of proximity, conspicuity, and longevity." *Spates*, 186 S.W.3d at 567.

### i. Proximity and Conspicuity

Mr. Sepulveda testified that when his wife fell, he called for help and saw a woman "behind the counter" but could not recall the distance from the counter to the mat. J. Sepulveda Dep. 39:11-18. Without any other evidence to show that an employee was physically close to a dangerous condition in the store, the Court finds Plaintiff has failed to come forth with any genuine dispute of

16

material fact as to this element.

For the reasons set forth in the section addressing condition, particularly Mr. Sepulveda's testimony that but-for the young man pulling on the mat, he "wouldn't have even noticed it," J. Sepulveda Dep. 40:22-23, the Court finds there is no evidence of conspicuity, and that Plaintiff has failed to come forth with evidence creating a genuine dispute of material fact as to this element.

### ii. Longevity

With respect to longevity, Plaintiff argues that Skecher's failure to check the temporary-use mat for more than three hours while customers traversed over it is evidence that the condition of the mat existed long enough that Skecher should have become aware of the dangerous condition. Failure to point to any evidence in support of this theory is fatal to Plaintiff's claim, as "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *United States v. Renda Marine, Inc.*, 667 F.3d 651, 655 (5th Cir. 2012) (quoting *Brown*, 337 F.3d at 541).

Without evidence to establish that the mat at issue had a tripping hazard and evidence of how long this condition existed before Mrs. and Mr. Sepulveda entered the store, Plaintiff's claim does not survive summary judgment. *See Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 893 (5th Cir. 2000) ("The harsh reality . . . is that if a plaintiff cannot prove facts to establish that it is more likely than not that the dangerous condition existed long enough that a proprietor should have known of its presence, there is simply no basis for recovery.") (citing *Gonzalez*, 968 S.W.2d at 938). "[T]here must be some proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition." *Reece*, 81 S.W. 3d at 816.

"To show constructive knowledge, Plaintiff must prove that the condition existed for a

sufficient period of time for Defendant to have a reasonable opportunity to discover it." *Patel v. Walmart Stores, Inc.*, No. 4:15-cv-427, 2016 WL 4161820, at *2 (E.D. Tex. Aug. 5, 2016). And with respect to actual knowledge, "even assuming [a plaintiff] could show that [the storeowner] knew its use of the mat might possibly become dangerous over time, actual knowledge requires the storeowner to know that the mat was in a dangerous condition at the time the accident occurred." *Townson v. Wal-Mart Stores, Inc.*, 60 F. App'x. 345, 347 (5th Cir. 2019) (per curiam) (citing *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 117 (Tex. 2010)). Considering all the evidence in the light most favorable to Plaintiff, the Court finds that she has failed to produce sufficient evidence to create a genuine dispute of material fact as to actual or constructive notice of any tripping hazard related to the mat that allegedly caused Plaintiff's fall.

## IV. CONCLUSION

Upon the foregoing, the Court finds that Plaintiff has failed to produce sufficient evidence to create a genuine dispute of material fact as to an essential element of her claim. Accordingly, the Court **GRANTS** Defendant Skechers USA Retail, LLC and Skechers USA, Inc.'s Motion for Summary Judgment (ECF No. 38). Alicia Sepulveda takes nothing from her claims against Sketchers. The Court will issue a separate order entering final judgment.

**It is so ORDERED this 20th day of September 2021.**

JASON PULLIAM
UNITED STATES DISTRICT